Dimitrios P. Biller, Bar No. 142,730
E-mail: biller_ldtconsulting@verizon.net
906 Kagawa Street
Pacific Palisades, CA 90272
Telephone: (310) 459-9870
Facsimile: (310) 459-9879

FILED
CLERK, U.S. DISTRICT COURT

OCT 1 3 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Attorney for Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

Dimitrios P. Biller,

      Plaintiff,

  vs.

Los Angeles County, Los Angeles
District Attorney's Office, Victor
Rodriguez, and Pam Brookwell, Does 1
- 20,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV 09-03079-GHK (RZx)

**DISCOVERY MATTER**

DECLARATION OF DIMITRIOS P.
BILLER IN SUPPORT OF
PLAINTIFF'S NOTICE OF MOTION
AND MOTION TO FOR AN ORDER
(1) COMPELLING DEFENDANT TO
PRODUCE INFORMATION AND
DOCUMENTS IN RESPONSE TO
PLAINTIIF'S WRITTEN
DISCOVERY, (2) PROVIDING
PLAINTIFF WITH 15 ADDITIONAL
DEPOSITION,(3) REQUIER
DEFENDANTS TO PAY PLAINTIFF
MONETARY SANCTIONS IN THE
AMOUNT OF $20,000.00 AND (4)
DRAFT A SPECIAL JURY
INSTRUCTION REALTED TO
DEFENDANTS DESRUCTION OF
EVIDENCE

**BEFORE THE HONORABLE
RALPH ZAREFSKY**

Date:  November 9, 2009
Time: 10:00 a.m.
Place: Room 540, Federal Roybal
Building

Declaration of Dimitrios P. Biller - 1

## DECLARATION OF DIMITRIOS P. BILLER

1.    I, Dimitrios P. Biller, am an attorney licensed to practice law in the State of California.  I have been so licensed since 1989.  I am in good standing with the State Bar of California.  All of the statements contained in this declaration are based on my personal knowledge.  If called to testify, I would and could provide admissible evidence to establish the facts describe herein.

## BACKGROUND

2.    This case arises out of Plaintiff's wrongful termination in violation of the American's with Disabilities Act on August 21, 2008 when he worked as a "Deputy District Attorney I" for the Los Angeles District Attorney's Office ("LADA'S OFFICE).  The LADA'S Office attempted to get me to voluntarily resign, but when I refused the attorney for the County of Los Angeles assigned to the Employee Relations at the LADA's Office (Julie Dixon-Silva) threaten me; she told me that I would never work in this city because my personnel records (including a horrible evaluation) would be released to prospective employers upon request.  I told Julie Dixon-Silva that I was going to file a law suit.  On August 22, 2009, I requested that the LADA's Office issue a Notice for Litigation Hold to preserve evidence and Electronically Stored Information ("ESI").

3.    I have been seeking this evidence since September 2008 when I filed a Petition with the Superior Court seeking an Order allowing me to conduct pre-

filing discovery. I served Defendants with Plaintiff's First Set of Request to Produce Documents, but Defendants responded with objections. The County of Los Angele fought my efforts to seek and preserve documents and electronically stored information ("ESI"), so I filed a complaint with the EEOC and requested a right to sue letter. I, however, did served discovery on Defendants.

## INTIAL MOTION FOR ADDITIONAL DEPOSITIONS/DISCOVERY

4.    Early on in this litigation I filed a Motion for an Order requesting additional depositions, and Defendant opposed that motion on the grounds it was too early to determine if additional depositions were necessary. Defendants took the position that once I completed the 10 depositions allowed under the Rules, then Defendant would reassess the need for more depositions. This Court agreed with Defendants' position and denied my request. Defendants also produce less than 500 documents with their initial disclosure. In early August 2009 I caused Notices for Depositions to be served on 10 witnesses and I again asked Defendants if Defendants would produce additional witnesses for deposition. Defendants' decline my request and state that he would have to reassess the question in September 2009 after the depositions were completed.

## DISCOVERY DISPUTE

5.    I served Defendants with (1) Special Interrogatories and (2) Request to Produce Documents on June 25, 2009. The responses were due on July 27,

2009.  I also served Notices for Deposition of 10 witnesses to be completed in August, 2008.    However, I have not been able to complete those depositions because of alleged scheduling problems with the Defendants and witnesses.  As of October 13, 2009, I am waiting to hear from Defendants' Counsel as to the dates when Defendants will produce Defendant Victor Rodriguez, Glenn Sproul and Todd Pikley.  In the depositions of Pam Brookwell, Julie Dixon-Silva, Robert Nishinaka, and Mark Evans I learned about material and very relevant facts that established certain elements of proof regarding my claims and certain documents that Defendants had in their position but did not produce before the depositions. Defendants later produced the documents after being identified by the deponents.

## ADDITIONAL DEPOSITIONS

6.    I identified 26 witnesses in my initial disclosure.  Defendant's Initial Disclosure identified 10 witnesses who can support their defenses in this case who I did not notice for depositions because of the 10 deposition limit rule.   These 10 witnesses include:

- Janet Moore;

- Carol Burke;

- Jacquelyn Lacey;

- Deputy Herrera;

- Deputy Masquera;

- Detective Aquire;

- Detective Magnolano;

- Commissioner Baird;

- Deputy Michael Hernandez;

- Deputy Sanchez;

7.    Julie Dixon-Silva has provided false testimony in an effort to intentionally mislead me and conceal evidence.  I asked Julie Dixon-Silva numerous questions regarding her duties and responsibilities at her deposition.  She never testified that she was the **Reasonable Accommodation Coordinator** for Defendants County of Los Angeles and Los Angeles District Attorney's Office who is responsible for starting the good faith interactive process to determine if there was a reasonable accommodation for me because of my disabilities (dyslexia and Major Depressive Disorder).  Defendants' Counsel then raised privilege objections during this part of the examination in an effort to throw me off track. However, Mark Evans testified that Julie Dixon-Silva was in fact the **Reasonable Accommodations Coordinator** Julie Dixon-Silva had those duties and responsibilities when my incident occurred.   In a ADA Claim one of the central issues is whether the employer provided the employee with a reasonable accommodation and whether the employer engaged in a good faith interactive process to find a reasonable accommodation.  I had no intention of taking the

depositions of Mark Evans when I filed the complaint, and I did not know of his identity. However, I learned from a spring of e-mails that he was involved in my case to a limited extent and I took his deposition to determine his involvement.

7.    Based on information and belief, Janet Moore, Carol Burke and Jacquelyn Lacey were instrumental in making the final decision to terminate me based on the advice of Julie Dixon-Silva. The Sheriff Deputies identified above were witnesses to the July 2, 2008 and August 14, 2008 incidents that are central to this case. The July 2, 2008 incident involved a Preliminary Hearing I was handling. The Sheriff Deputies appeared late, so the Preliminary Hearing had to be continued. I asked the Judge to "order" the Sheriff Deputies back to Court the next day. The Sheriff Deputies became very angry at me for making this request and Deputy Aquire told me to "never ask a judge to order us back to court"; "you're new and you'll have to learn the hard way", or words to that affect. The August 14, 2008 incident relates to the basis of the internal complaint that was filed against me.

8.    On July 30, 2009 I sent Defendants' Counsel a letter requesting 10 additional depositions. Defendants' Counsel denied the request, so I prepared a Joint Stipulation regarding additional depositions.

9.    I took the depositions of Defendant Pam Brookwell and Julie Dixon-Silva, the Attorney assigned by the County of Los Angeles to the LADA's Office

to handle employee relations issues.  During both those depositions I discovered

the existence of relevant documents that I had requested in his First Set of Request

for Production of Documents.  I adjourned the deposition of Julie Dixon-Silva

because (a) Defendants' Counsel made improper objections and made speaking

objections that resulted in the witness changing her testimony,   and (2) the witness

identified important documents that should have been produced and I need to ask

the witness questions regarding those documents.  Furthermore, I learned that a

Notice for Litigation Hold was not issued; the e-mail management policy of the

LADA's Office requires employees to delete e-mails on a daily basis or not to save

e-mails for over 30 days.

10.    Following the deposition of Julie Dixon-Silva, I sent Defendants'

Counsel another e-mail regarding discovery abuses and Plaintiff prepared a Rule

37.1 letter addressing the discovery issues that must be resolved.

## SPECIAL INTERROGATORIES

10.    Additionally, I wrote Defendants' Counsel an e-mail complaining

why Defendant's responses to Plaintiff's Special Interrogatories were inadequate.

I once again had to prepare a Rule 37.1 letter in order to prepare for a Motion to

compel.  I agreed to provide Defendants with a three week extension, so the

supplemental responses were due on **September 10, 2009**.  As of **October 13,**

**2009** Dependents have not supplemented the initial responses.  Defendant's

Counsel informed me that the County of Los Angeles and Los Angeles District Attorney's Office will not provide further information in response to Plaintiff's First Set of Interrogatories.

## REQUEST FOR PRODUCTION OF DOCUMENTS

11.    On August 10, 2009 I wrote a Rule 37.1 letter to Defendant's Counsel about inadequate responses to Plaintiff's First Set of Request Production of Documents.   Defendants produced 354 pages of documents with their Initial Disclosure.  (Bates Stamped D-001 through D-354)  Defendants then produced only 71 pages of documents in response to Plaintiff's First Set of Request for Production of Documents (Bates Stamped D-0355 through D-0426).  Obviously, there were many more documents that were responsive to Plaintiff's First Set of Request for Production of Documents that Defendants failed to produce.

12.    Plaintiff then started the "meet and confer" process.  The parties had a meet and confer on August 14, 2009 to resolve the discovery dispute regarding Plaintiff's First Set of Request for Production of Documents.  Although the parties agreed that Defendants would produce the documents in two weeks --- **August 28, 2009**, the documents were not produced until **September 2, 2009** – slightly over one day before the September 4, 2009 deposition of Julie Dixon-Silva. Defendants produced 6,286 pages of documents (Bates Stamped D-0427 through

6713). I had to go through those documents in one day (18 hours) to prepare for Julie Dixon-Silva's deposition.

13. Moreover, relevant documents were produced *after* the depositions of (a) Pam Brookwell and (b) Julie Dixon-Silva. I needed these documents to conduct more complete depositions. Defendants produced very significant and relevant documents regarding ADA claims, investigation manual and my background investigation on September 17, 2009. These documents are Bates Stamped D-06714 through D-06799. Defendants produced the Los Angeles Sheriff's Department Manual regarding the duties and responsibilities of the Sheriff Control Office and Subpoena Liaision *after* Pam Brookwell's deposition – the Subpoena Liaison supervising the Subpoena Control Officers who cause an internal complaint to be filed against me that led to my wrongful termination. These documents were produced on September 25, 2009 and are Bates Stamped D-07629 through D-07338. Furthermore, on September 30, 2009, Defendant produced *some of the documents from the personal computer assigned to me when I worked at the LADA's Office.* Defendant did *not* produce the memos I prepared regarding my evaluations of my performance and cases I handled at the Preliminary Hearing Court. These documents are Bates Stamped D-07840 through D-08322.

14.    I took the depositions of Defendant Pam Brookwell and Julie Dixon-Silva, the Attorney assigned by the County of Los Angeles to the LADA's Office to handle employee relations issues.  During both those depositions I discovered the existence of relevant documents that I had requested in his First Set of Request for Production of Documents.  I adjourned the deposition of Julie Dixon-Silva because (a) Defendants' Counsel made improper objections and made speaking objections that resulted in the witness changing her testimony,   and (2) the witness identified important documents that should have been produced and I need to ask the witness questions regarding those documents.  Furthermore, I learned that a Notice for Litigation Hold was not issued; the e-mail management policy of the LADA's Office requires employees to delete e-mails on a daily basis or not to save e-mails for over 30 days.

15.    Following the deposition of Julie Dixon-Silva, I sent Defendants' Counsel another e-mail regarding discovery abuses and Plaintiff prepared a Rule 37.1 letter addressing the discovery issues that must be resolved.

16.    Attached as Exhibit "1" is a true and correct copy of the August 22, 2008 letter I wrote and sent to Julie Dixon-Silva requesting that the she issue a Notice for Litigation Hold.

17.    Attached as Exhibit "2" is a true and correct copy of the September 21, 2008 letter I wrote and sent to Julie Dixon-Silva requesting once again that she

issue a Notice for Litigation Hold and proving her with the information that needs to be preserved.

18.    Attached as Exhibit "3" is a true and correct copy of Julie Dixon-Silva's deposition transcript related to the Notice for Litigation Hold she did not issue.

19.    Attached as Exhibit "4" is a true and correct copy of the Request for Production of Documents I caused to be served on October 8, 2008.

20.    Attached as Exhibit "5" is a true and correct copy of the July 30, 2009 letter I wrote to Defendants' Counsel regarding the "meet and confer" process pursuant to Local Rule 37.1 regarding additional depositions I wanted to take and a draft Joint Stipulation.  I later agreed not to bring a motion until later in the litigation to determine if more depositions were needed.  As of October 7, 2009 **I have taken 7 depositions** and I have spent approximately **15 hours taking those depositions** – approximately 2 hours a deposition.

21.    Attached as Exhibit "6" is the August 10, 2009 e-mail and Local Rule 37.1 letter related to Plaintiff's First Set of Request for Production of Documents. The letter was prepared and sent to obtain more documents that Defendants obviously did not produce.  Defendants did provide additional documents in "dribs and drabs" over the next 9 weeks.  However, Defendants have not provided all the responsive documents.

22.     Attached as Exhibit "7" is a true and correct copy of the August 17, 2009 e-mail I wrote and sent requesting additional discovery that was not produced.

23.     Attached as Exhibit "8" is a true and correct copy of the August 20, 2009 e-mail and Local Rule 37.1 letter related to Defendant's failure to provide meaningful responses to Plaintiff's Contention Interrogatories.

24.     Attached as Exhibit "9" is a true and correct copy of the August 20, 2009 e-mail I wrote and sent to Defendant Counsel confirming he agreed to provide supplemental responses to Plaintiff's First Set of Request for Production of Documents.

25.     Attached as Exhibit "10" is a true and correct copy of the September 7, 2009 memo related to discovery issues and Defendants' late production of documents.

26.     Attached as Exhibit "11" is a true and correct copy of the September 9, 2009 e-mail and Local Rule 37.1 letter related to Defendants' failure to produce all responsive documents.

27.     Attached as Exhibits "12" and "13" are the deposition testimony transcripts of Julie Dixon-Silva and Mark Evans related to Mrs. Dixon-Silva's position as the Reasonable Accommodation Coordinator.

28.    Attached as Exhibit "14" is a true and correct copy of the County of Los Angeles' "Employment Guidelines for the Reasonable Accommodations Process.

29.    Attached as Exhibit "15" is a true and correct copy of the initial Joint Stipulation for a Order Allowing Plaintiff to take Additional Depositions.

30.    Attached as Exhibit "16" is a true and correct copy Order Setting Scheduling Dates issued by the Honorable Judge George H. King.

31.    Attached as Exhibit "17" is a true and correct copy of the Plaintiff's Initial Disclosure.

32.    I have spent well over 40 hours related to resolving the discovery disputes explained in the Joint Stipulation.  This time was spent (a) writing letters and e-mails under Local Rule 37.1, (b) meeting and conferring with opposing counsel in an effort to resolve the issues as required by Local Rule 37.1, (c) preparing Joint Stipulations as required by Local Rule 37.2, (d) reviewing, revising and finalizing the Joint Stipulations, (e)preparing this declaration, (f) reviewing the depositions transcripts of Mark Evans and Julie Dixon-Silva, (g) reviewing documents to confirm discovery abuses have occurred, and (h) preparing, reviewing and finalizing the Notice of Motion and Motion and Proposed Order.  I have spent $157.60 on photocopying costs related to the documents/pleadings filed in connection to this motion.  When I was a partner at Pillsbury Winthrop in 2003,

my hourly rate was $500.00.  I believe that $20,157.80 (40 multiplied by $500.00, plus $157.80) is a reasonable monetary sanction.

33.     I declare, under the Penalty of Perjury, that the forgoing is true and correct.  Executed this 13th day of October 2008 in the City of Pacific Palisades, County of Los Angeles, and State of California.

_____
Dimitrios P. Biller

EXHIBIT 1

**Dimitrios P. Biller**
**906 Kagawa Street**
**Pacific Palisades, CA 90272**
**(310) 459-9870**

October 7, 2008

Nohemi Gutierrez Ferguson
GUTIERREZ, PRECIADO & HOUSE
3020 East Colorado Boulevard
Pasadena, California 91107

Re: Dimitrios P. Biller v. County of Los Angeles, et. al.

Dear Mrs. Gutierrez Ferguson:

I write to confirm our telephone conversation yesterday (October 6, 2008).

I called you to inform you that the County of Los Angeles and Victor Rodriguez have been personally served. I also informed you that Pam Brookwell will be personally served shortly. I asked that you take off calendar the Respondents' Motion to Quash scheduled for October 31, 2008. You refused and stated "I'm not taking anything off calendar until I see Proofs of Service."

I told you that I would be sending you the Proofs of Service shortly. I furthermore informed you that the pleadings served included a First Amended Petition and modified pleadings in support of the First Amended Petition and the Motion to Allow Discovery pursuant to CCP 2035.010. I suggested that you contact the County of Los Angeles and/or Victor Rodriguez to obtain copies of these materials.

Enclosed with this letter please find the Proofs of Service for all Defendants (County of Los Angeles, Victor Rodriguez & Pam Brookwell). Now that you have the Proofs of Service in hand, please take the Motion to Quash off

calendar.  Please let me know as soon as possible so I don't waste any time preparing an opposition to that motion.

I also informed you that the Motion to Allow Discovery pursuant to California Code of Civil Procedure 2035.010 scheduled for October 15, 2008 was taken off calendar.  I told you that the Motion was put on calendar for October 31, 2008 at 9:00 a.m. in Department 72.

I look forward to working with you on this case.  Thank you for your cooperation.

Sincerely yours,

Dimitrios P. Biller

EXHIBIT 2

**Dimitrios P. Biller**
**906 Kagawa Street**
**Pacific Palisades, CA 90272**
**(310) 454-0728**


September 23, 2008


Julie Dixon-Silva
Chief Legal Advisor
Employee Relations
210 No. Figueroa Street
Suite 1455
Los Angeles, CA 90012

Los Angeles District Attorney's Office
210 W. Temple Street, 18th Floor
Los Angeles, CA 90012

Victor Rodriguez
4848 Civil Center Way
East Los Angeles, CA 90022

Pam Brookwell
214 South Fetterly Ave.
East Los Angeles, CA, 90022

Dear Defendants:

        Enclosed please find a Notice for Litigation Hold.  Please
distribute the Notice to all the "Key Players", and "custodians"
in possession of any and all potentially relevant information
regarding the claims that I will pursue set forth in the Notice.

        I have attempted to identify some of those players, but you
would have a better idea who should also receive the Notice for
Litigation Hold.  For example, Janet Moore, Carol Burke, and all

DA Investigators involved in my background check before the DA's Office hire me and those investigators involved in my termination should receive the Notice for Litigation Hold.

You carry the burden to identify all "Key Players" and "Custodians." This will require that you conduct an investigation to make this determination. I will be serving interrogatories seeking the identities of these people.

If the enclosed Notice is not distributed as requested, then I will hold the Defendant not distributing the Notice responsible for any intentional or inadvertent destruction of documents, information, materials, communications, writings, and electronically stored information ("ESI"). I will file a motion with the Court and seek appropriate sanctions.

Thank you for your cooperation.

Sincerely yours,

Dimitrios P. Biller

## NOTICE TO PRESERVE DOCUMENTS/INFORMATION FOR LITIGATION

TO:   (1) Los Angeles District Attorney's Office, (2) Victor Rodriguez, (3) Pam Brookwell, (4) Los Angeles Sheriff's Department, (5) all Deputy District Attorneys working in the Training Division between May 6, 2008 and June 6, 2008, (6) all Deputy District Attorneys that were being trained during that time (approximately 27 people), (7) all employees and Deputy District Attorneys working in the East Los Angeles Office of the District Attorney's Office located at 4848 Civic Center Way, East Los Angeles, (8) Information Technology Department for the Los Angeles District Attorney's Office, and (9) other "Key Players" that are known or that should be known to the above persons and entities.

FROM: Dimitrios P. Biller

DATE: September 24, 2008

RE:   <u>Dimitrios P. Biller v. Los Angeles District Attorney's Office, Victor Rodriguez, Pam Brookwell, Does 1 through 10, et. al.,</u> Case No.: BS116860

---

I.   PETITION & COMPLAINT.

On September 12, 2008 Plaintiff filed and served a Petition to Perpetuate Testimony and Preserve Evidence. Additionally, Plaintiff filed a Notice of Motion and Motion for a hearing to seek an Order to Perpetuate Testimony and Preserve Evidence that will be heard in Department 72 of the Superior Court for the State of California, Central District.

The Petition was filed because the Los Angeles District Attorney's Office has failed and refused to return the attorney-work product of Plaintiff while he was employed with the District Attorney's Office. Addition, the Petition seeks to preserve all documents, information and electronically stored information ("ESI") regarding a number of topics related to Plaintiff because this information, documents and ESI are very

relevant to the claims Plaintiff will file.

On August 14, 2008 the Subpoena Control Office for the Sheriff's Department in East Los Angeles (Pam Brookwell) lodged a false and meritless complaint against Plaintiff with Plaintiff's supervisor (Victor Rodriguez). After Plaintiff denied the allegations, he had an emotional break down due to his mental condition. Plaintiff requested that he be allowed to go home, but Mr. Rodriguez said "no" because Plaintiff was a "liability to the Department" if he got into a accident.

Mr. Rodriguez told Mr. Biller there was going to be a full investigation because he was denying the allegations of the complaint. He explained that Janet Moore would conduct that investigation because the situation was out of his hands. Plaintiff explained that Pam Brookwell was only retaliating against Plaintiff because he complained to her about Sheriff Deputies not showing up to court when subpoenaed, being late to court and not bringing the necessary evidence to court. Plaintiff wrote a memo confirming this conversation with Pam Brookwell that Mr. Rodriguez has in his possession but he never gave it to the Sheriff's Department.

Carol Burke and a couple of DA Investigators arrived in Mr. Rodriguez' office. They did not want to talk about the situation, but wanted to make sure Plaintiff was able to drive home. Mrs. Burke told Plaintiff that he would have 4 days paid leaves of absence. She also told Plaintiff that she was going to call Plaintiff on August 20, 2006 to let me know the status of the investigation. However, Plaintiff was supposed to call Victor Rodriguez everyday to let him know where Plaintiff was during the day.

Plaintiff was instructed to go to Janet Moore's Office on August 21, 2008. Expecting to be interviewed about the meritless complaint Pam Brookwell lodge to give his side of the story for a FULL INVESTIGATION, Plaintiff was terminated. He was told that there would be no discussions about the facts of the termination. Julie Dixon-Silva told Plaintiff that if he voluntarily resigned, then the damaging evaluations would be shredded. If Plaintiff did not then those documents will remain in his file and all prospective employees for Plaintiff would have access of those documents if Plaintiff signed a release that is often required by employers. Mrs. Dixon-Silva said that Plaintiff had to make a decision at that very moment or the deal was off. In return for voluntarily resigning, the LADA's Office would extend his medical benefits and pay for two more weeks. When Plaintiff refused, Janet Moore said that she may be able to get those benefits extended for a month. Plaintiff refused.

## II.    PLAINTIFF'S LEGAL ALLEGATIONS.

Plaintiff will file a complaint once Plaintiff's appeal with the Los Angeles Human Resource Depart is completed. The claims will include:

- Wrongful Termination against Public Policy

- Discrimination towards somebody suffering from major chronic depression, organic brain syndrome and dyslexia in violation of the Americans with Disability Act.

- Defamation, including libel and slander per se

- Intentional Misrepresentation

- Negligent Misrepresentation

- Negligence

- Intentional Interfere with Prospective Economic Relations

- Negligent Interfere with Prospective Economic Relations

- Intentional Interference with Prospective Economic Advantage

- Negligent Interference with Prospective Economic Advantage

- Intentional Emotional Distress

  Negligent Emotional Distress

- Injunctive Relief under Business & Professions Code Section 17200 for an order (a) expunging Plaintiff's personnel file, and (b) requiring the Los Angeles Sheriff's Department to implement new procedures to fulfill its obligation to make sure Sheriffs show up in court when subpoenaed and not to be late and to produce the evidence in its custody and control.

- Prayer for compensatory, general, special and punitive damages against all Defendants.

- Conspiracy

III.    **DISCOVERY.**

Defendants are represented by the Legal Department and outside counsel.  In the course of preparing for trial, Defendants may be required to provide the Plaintiff with information and documents concerning the above allegations in a process called "discovery."  **Throughout the course of this lawsuit and other actions against Defendants, you are obligated to maintain any documents/information that is relevant to or potentially relevant to the above-listed allegations.  This obligation exists notwithstanding any Document Retention Policy and supersedes any instructions contained in any such Document Retention Policy.**

IV.    **DOCUMENTS AND INFORMATION TO PRESERVE.**

Subject matter and topics of Documents to be preserved:

- Any and all Documents, Information, Communications, and Materials regarding Dimitrios P. Biller, aka "Dimi", "D" and "Dimitri"
- Any and all Documents, Information, Communications, and Materials regarding Plaintiff's employment application and all Documents generated by LADA's Office during that process
- Any and all Documents, Information, Communications, and Materials related to the training materials that the Training Division of the LADA Office gave to Plaintiff while in training from May 6, 2008 to June 6, 2008
- Any and all Documents, Information, Communications, and Materials regarding the standards necessary to pass the one month long training course that the Los Angeles District Attorney's Office provide to Plaintiff in May 2008
- Any and all Documents, Information, Communications, and Materials regarding the definitions and criteria for "needs improvement", "satisfactory" and "competent" as used when

evaluating Deputy District Attorneys I during their probationary period

- Any and all Documents, Information, Communications, and Materials related to evaluations, performance review, grades, comments about Plaintiff's skills and abilities as a trial attorney and/or attorney, and any criticisms by any trainer about Plaintiff
- Any and all Documents, Information, Communications, and Materials regarding the decision making process and final decision to assign Plaintiff to East Los Angeles, and the criteria used to assign Deputy District Attorney's I to the various offices of the District Attorney's Office.
- Any and all Documents, Information, Communications, and Materials exchanged between the Training Division of the LADA's Office and the East Los Angeles Office of the District Attorney regarding Plaintiff
- Any and all Documents, Information, Communications, and Materials exchanged between any and all Deputy District Attorneys regarding Plaintiff
- Any and all Documents, Information, Communications, and Materials related to the complaint Pam Brookwell lodge with Mr. Rodriguez about Plaintiff
- Any and all Documents, Information, Communications, and Materials related to any and all investigations of the complaint Pam Brookwell lodged against Plaintiff
- Any and all Documents, Information, Communications, and Materials related to the personnel file of Victor Rodriguez
- Any and all Documents, Information, Communications, and Materials regarding any communications related to the employment of Plaintiff and the decision to terminate his employment.
- Any and all Documents, Information, Communications, and Materials Mr. Rodriguez created and maintained regarding Plaintiff's performance when he worked in the East Los Angeles Office of the District Attorney
- Any and all Documents, Information, Communications, and Materials between "Robert" (Filing Deputy for the East Los Angeles Office) and Mr. Rodriguez regarding Plaintiff
- Any and all Documents, Information, Communications, and Materials between "Robert" (Filling Deputy for the East Los Angeles Office) and any person not associated with the LADA's Officer regarding Plaintiff

- Any and all Documents, Information, Communications, and Materials exchanged between Terry Mitchell and Mr. Rodriguez regarding Plaintiff
- The LADA's file for <u>People v. Bobavilla</u>
- The trial transcripts for <u>People v. Melendez</u>
- The LADA's file for <u>People v. MaCloud</u>
- Any and all Documents, Information, Communications, and Materials created, maintained and stored in the personal computer that was assigned to Plaintiff while he worked at the East Los Angeles Office of the District Attorney, including but not limited to, the folders and documents contained in each folder
- Any and all Documents, Information, Communications, and Materials that Plaintiff created in connection with <u>People v. Melendez</u> and <u>People v. Martinez.</u>

As used in this Notice, the term "Document" , "Information", "Materials", "Communications" , or "Writings" means any characters, symbols, charts, drawings, etc. stored on paper; e-mail; on-line data storage attached to Defendant's mainframe computers, including but not limited to PCs, laptops, personal computing devices, servers and drivers; off-line data storage on fixed drives of PCs, laptops, personal computing devices and network workstations; microfiche; videotape; audiotape; CD, DVD, floppy disk; MT-tape; removable electronic storage devices (e.g., "zip disks"); film; photographs; or other media.  The term "Document" "Information", "Materials", "Communications", or "Writings" includes the aforementioned items generated by Defendants.

## V.    <u>ACTION.</u>

Please be advised that the destruction of any documents/information relevant to the litigation described above may violate Defendant's discovery obligations and may subject Defendant to sanctions, fines or other penalties.  Please preserve and save all documents/information in your custody and control that are relevant or potentially relevant to this litigation.  You should not destroy, discard or throw away any such documents. You may be asked to provide documents or information to your supervisor/manager, Defendant's Legal Department, Defendant's IS Department or outside counsel to comply with requests from Plaintiff for such documents.  Defendant's IS Department may conduct a search of your computer and your department's servers for responsive documents or information.  You should try to provide your supervisor/manager and/or

counsel with as much information as possible so that they can comply with all lawful requests for information.

If you have any questions concerning how to comply with this Notice, please do not hesitate to contact your supervisor/manager or Legal Department. Your cooperation and compliance with this Notice is essential in protecting Defendant's interests in this litigation.

EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DIMITRIOS P. BILLER,

      Plaintiff,

   vs.                     Case No. CD 09-03079

L.A. COUNTY, L.A. DISTRICT
ATTORNEY'S OFFICE; et al.,

      Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~

**DEPOSITION OF**

**JULIE DIXON SILVA**

**VOLUME 1**

September 4, 2009
9:06 a.m.

523 W. 6th Street, 10th floor
Los Angeles, California

Rebecca Delgadillo, CSR No. 7021



Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

E SQUIRE
an Alexander Gallo Company

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


DIMITRIOS P. BILLER,

              Plaintiff,

        vs.                   Case No. CD 09-03079

L.A. COUNTY, L.A. DISTRICT

ATTORNEY'S OFFICE; et al.,


              Defendants.

_____


DEPOSITION OF

JULIE DIXON SILVA, VOLUME 1



September 4, 2009

9:06 a.m.


523 W. 6th Street, 10th floor

Los Angeles, California




Rebecca Delgadillo, CSR No. 7021



ESQUIRE
~ an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
vw.esquiresolutions.com

2

APPEARANCES OF COUNSEL

For the Plaintiff in Pro Per:

    DIMITRIOS P. BILLER, ESQ.

    906 Kagawa Street

    Pacific Palisades, California  90272

    (310) 459-9870

    biller_ldtconsulting@verizon.net

For the Defendant:

    GUTIERREZ, PRECIADO & HOUSE, LLP

    CALVIN R. HOUSE, ESQ.

    3020 East Colorado Boulevard

    Pasadena, California  91107

    (626) 449-2300

    calvin.house@gphlawyers.com

Also Present:

    Samuel Wilner



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

3

INDEX OF EXAMINATION

WITNESS:  JULIE DIXON SILVA, VOLUME 1

EXAMINATION                                          PAGE

By Mr. Biller                                          6


INFORMATION REQUESTED

Page 45, line 7

Page 128, line 11


WITNESS INSTRUCTED NOT TO ANSWER

Page 34, line 4

Page 53, line 8

Page 90, line 19

Page 95, line 9

Page 103, line 1

Page 105, line 22

Page 106, line 4/8/13

Page 146, line 11/16/24

Page 163, line 2



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

4

INDEX TO EXHIBITS

| Exhibit | Description | Page |
|---|---|---|
| 6 | Letter dated 8-26-08 to Director of Personnel/Appeal Unit | 46 |
| 7 | Report on Probationer | 57 |
| 8 | Letter dated 8-22-08 to County Counsel Office | 76 |
| 9 | Letter dated 9-23-08 to various persons | 80 |
| 10 | Notice to Preserve Documents/Information for Litigation | 80 |
| 11 | Letter dated 9-9-08 to County Counsel Office | 80 |
| 12 | Letter dated 9-16-08 to Mr. Biller | 81 |
| 13 | Letter dated 8-10-09 to Mr. Schwartz | 85 |
| 14 | Memorandum dated 10-15-04 to All District Attorney Personnel | 112 |
| 15 | Employment Guidelines for the Reasonable Accomodation Process | 118 |
| 16 | String of e-mails from Carol Burke | 137 |
| 17 | String of e-mails from Carol Burke | 139 |
| 18 | Memorandum in re Dimitrios Biller dated 8-14-08 | 147 |
| 19 | Draft/Memorandum in re Dimitrios Biller | 148 |
| 20 | Draft II/Memorandum in re Dimitrios Biller | 149 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
ww.esquiresolutions.com

5

1    21   Draft/Memorandum in re Dimitrios Biller    149

2    EXHIBITS (CONTINUED)

3

4    22   County of L.A. Annual Report    151

5    23   Memorandum dated 10-23-08 to Dennis Tafoya 153

6    24   Assessment Worksheet dated 12-3-08    155

7    25   Appeal of Probationary Discharge    155

8    26   Memorandum dated 12-3-08 to    156

9         Julie Dixon Silva

10   27   Memorandum dated 11-5-08 to    159

11        Julie Dixon Silva

12   28   Memorandum dated 12-31-08 to    160

13        Julie Dixon Silva

14   29   Assessment Worksheet dated 5-14-09    161

15   30   Memorandum dated 5-28-09 to    164

16        Julie Dixon Silva

17

18

19

20

21

22

23

24

25



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
ww.esquiresolutions.com

6

September 4, 2009

1    DEPOSITION OF JULIE DIXON SILVA, VOLUME 1

2                  September 4, 2009

3

4                  JULIE DIXON SILVA

5    having been first duly sworn, testified as follows:

6                     EXAMINATION

7    BY MR. BILLER:

8         Q.    Please state your name for the record.

9         A.    Julie Anne Dixon Silva.

10        Q.    Can you speak up because I can't hear you.  I

11   am hard of hearing.

12        A.    Julie Anne Dixon Silva.

13        Q.    Have you ever had a deposition taken before?

14        A.    No.

15        Q.    Have you ever taken a deposition?

16        A.    Yes.

17        Q.    How many times?

18        A.    Over 200.

19        Q.    So you understand the deposition process?

20        A.    Yes.

21        Q.    Okay.  I will go over some of the rules just

22   so we are on the same page.

23        A.    Okay.

24        Q.    You understand that the oath you have taken

25   obligates you to tell the truth?



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

7

1    A.    Yes.

2    Q.    You understand that the penalty of perjury

3  applies in this case?

4    A.    Yes.

5    Q.    Although this is an informal environment, you

6  understand that this deposition is a formal proceeding

7  and has the same effect as if it were taking place in

8  court?

9    A.    Yes.

10    Q.    You understand the meaning of penalty of

11  perjury?

12    A.    Yes.

13    Q.    What's your understanding?

14    A.    I believe my understanding is that if I don't

15  tell the truth this particular time or when we later go

16  to court, and you want to use the transcript to ask me,

17  I guess, similar questions, that I would say the same

18  thing and not lie.

19    Q.    No.  Penalty of perjury is a law.

20    A.    Okay.  Maybe you can explain it to me then.

21    Q.    So we are on the same page, if you make a

22  false statement regarding a material fact and you make

23  that statement knowingly and intelligently, and then it

24  is later determined that that material -- your testimony

25  regarding the material fact was false, you can be



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

8

1   prosecuted, and if found guilty, you can receive a

2   prison term or civil penalty.

3        A.   Who would determine that I lied?

4        Q.   A court.

5        A.   Okay.

6        Q.   Do you understand now?

7        A.   Yes, I understand.  I wasn't thinking of

8   being prosecuted so I apologize.

9        Q.   Well, that's why they call it a penalty of

10   perjury.

11        A.   I just don't think of myself as a criminal but

12   I see what you are saying.

13        Q.   Do you understand you are not allowed to

14   guess?

15        A.   Yes.  Do you want to tell me what you mean by

16   guess?

17        Q.   Sure.  I will give you an example.  I met you

18   the first time -- I think the first time I met you was

19   at a training session that you did with regard to some

20   topic and we talked, didn't we?

21        A.   I don't remember that.

22        Q.   Well, if I were to ask you the size of my desk

23   and you provided an answer to the dimensions of my desk,

24   that would be speculation and guessing because you have

25   never been to my office, have you?



ESQUIRE
An Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
ww.esquiresolutions.com

Julie Dixo. Silv. - Volume I                    Sept .ber 4, 2009

9

1    A.    No, sir.

2    Q.    Do you understand now?

3    A.    Yes.

4    Q.    You are entitled to provide estimations.

5    A.    Okay.

6    Q.    Do you understand that?

7    A.    Yes.

8    Q.    Okay.  You understand the difference between

9    estimation and a guess or speculation?

10   A.    I think so.

11   Q.    What's your understanding?

12   A.    Well, if I had been to your office but I had

13   not measured your desk and you asked me how big your

14   desk was, I could estimate what I thought it was from

15   observing it.

16   Q.    That's right.

17   A.    Having never been to your office and you asked

18   me how big your desk was, I could say, I could guess

19   that I assume you are an average sized man, you would

20   have a desk that was 5 feet long.

21   Q.    Okay.  You got it.  Do you understand you are

22   only allowed to give verbal responses?

23   A.    Yes.

24   Q.    No uh-huh's, huh-huhs, or physical gestures.

25   A.    Okay.



ESQUIRE
━ an Alexander Gallo Company ━

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
ww.esquiresolutions.com

10

1    Q.    You understand why that rule exists?

2    A.    Why don't you tell me.

3    Q.    Because the court reporter cannot transcribe

4    nonverbal responses and physical gestures.

5    A.    Okay.

6    Q.    We are doing pretty good so far in that we are

7    not talking over each other, but it is very important

8    for us to work hard and not speak at the same time

9    because the court reporter can't take down or transcribe

10   what is being spoken by two different people at the same

11   time.  Do you understand that?

12   A.    Yes.

13   Q.    I will try very hard not to cut you off when

14   you are giving testimony.  Okay?

15   A.    Okay.

16   Q.    I ask that you work equally as hard not to cut

17   me off when I am asking you questions.

18   A.    Okay.

19   Q.    During the course of the deposition your

20   counsel may make objections.  Give him an opportunity to

21   make the objection --

22   A.    Okay.

23   Q.    -- for the record.  You could then answer the

24   question unless counsel tells you not to answer the

25   question.  At that point you have a choice to either



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
ww.esquiresolutions.com

11

1    answer the question or follow your counsel's advice.  Do

2    you understand?

3         A.    Yes.

4         Q.    At the end of this deposition you will receive

5    a transcript.  You know what a transcript is, don't you?

6         A.    Yes.

7         Q.    Most likelihood counsel and I will agree that

8    you will receive that transcript, it would be prepared

9    within two weeks and you will receive it within two

10   weeks after that.

11            You will have an opportunity when you receive

12   the transcript to read it, to determine if the words

13   that you spoke were true and accurate, and to make any

14   changes you deem necessary to provide the best and most

15   accurate testimony you can provide.  Do you understand?

16        A.    Yes.

17        Q.    Now, however, if you do make a significant

18   change to your transcript on an important issue, your

19   credibility will be attacked.  Do you understand?

20        A.    I understand you are saying that, okay.

21        Q.    And do you understand why your credibility

22   will be attacked?

23        A.    Not necessarily.

24        Q.    Okay.  Let me explain it.  Your credibility

25   will be attacked because you are in essence denying me



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite  500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

12

1   the opportunity to question you about your testimony.

2   When you make a change in the transcript and then sign

3   the transcript, I can't ask you follow-up questions to

4   the changed answer.  Do you understand?

5       A.   Yes.

6       Q.   For example, this is only an example, if you

7   changed an answer from yes to no, you would expect that

8   my line of questioning would be different regarding that

9   question; correct?

10      A.   I could see that would be the case, yes.

11      Q.   So by making material changes in the

12  transcript, you are in essence denying me an opportunity

13  to take your deposition and ask you questions regarding

14  your most accurate testimony.

15      A.   Okay.  I misheard you.  I thought the first

16  time you said if I made a change.  Now you are saying

17  material change.

18      Q.   I said changed an important issue.

19      A.   Okay.  I didn't understand that to be what

20  you --

21      Q.   Do you understand now or do you need me to go

22  through it?

23      A.   I understand if I see the transcript and there

24  is something that I think is incorrect, that I could

25  change that.  At least that's my understanding of doing



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

13

1   a deposition.

2        Q.    That's right.

3        A.    I didn't think that would effect my

4   credibility necessarily.  That's not my understanding of

5   that process.

6        Q.    Well, I will argue to the jury if it does.

7        A.    Okay.

8        Q.    As an experienced lawyer, you understand that

9   you have to give the most accurate testimony here today,

10  and I'm telling you that if you make a material change

11  or a change to an answer that is significant, that's

12  denying me an opportunity to question you on that

13  change.

14       A.    I understand that is your position, yes.

15       Q.    Are you familiar with the jury instructions

16  regarding witnesses?

17       A.    In federal court?  I haven't handled a case in

18  federal court in over five years, so I know I have read

19  them back five years ago, I have not read them recently.

20       Q.    Okay, state court, you are familiar with

21  those; right?

22       A.    Again, I haven't handled a case myself in over

23  five years so I won't be able to answer any questions on

24  it.

25       Q.    Let me just try to refresh your recollection.



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
ww.esquiresolutions.com

14

1    A.    Okay.

2    Q.    With regard to jury instructions in federal or

3    state court on witnesses, there is an instruction that

4    the witness should determine the credibility of the

5    witness; correct?

6    A.    I'm sorry, the witness.

7    Q.    Determine the credibility of witnesses.

8         MR. HOUSE:   I think you meant the jury.  You

9    said the witness should determine.

10        MR. BILLER:   I'm sorry, strike that.

11        MR. HOUSE:   That's why she is confused.

12   BY MR. BILLER:

13   Q.    The jury will be instructed that it should

14   determine the credibility of witnesses.

15   A.    I'm familiar with that.

16   Q.    You are familiar with the jury instruction

17   that the jury should determine the believability of a

18   witness?

19   A.    I am familiar with that, yes.

20   Q.    You are familiar with the jury instruction

21   that the jury can take into account in evaluating the

22   believability and credibility of the witness whether the

23   witness makes prior inconsistent statements?

24   A.    I'm familiar with that, yes.

25   Q.    And so you understand if you make a statement



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite  500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

Julie Dixon-Silve - Volume I                    September 4, 2009

15

1    here today that you later change, you are essentially

2    giving me the prior inconsistent statement.  Do you

3    understand that?

4          A.    Possibly, yes.

5          Q.    At the end of the transcript you will receive

6    a -- at the end of the deposition you will receive a

7    transcript.  You will be asked to review it, sign it and

8    give it back to your counsel.  And you will sign it

9    under penalty of perjury.  Do you understand that?

10         A.    Yes.

11         Q.    What did you do for your deposition

12   preparation today?

13         A.    Nothing.

14         Q.    Did you meet with your counsel yesterday?

15         A.    Yes.

16         Q.    How long did you meet?

17         A.    Maybe an hour.

18         Q.    Where did you meet?

19         A.    In the 201 North Figueroa building.

20         Q.    That's your office, correct, your office is

21   housed in that building; correct?

22         A.    Yes.

23         Q.    Were you shown any documents?

24         A.    Yes.

25         Q.    What documents were you shown?



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

16

1    A.    Some letters that you wrote and I think a

2   letter that I wrote.

3    Q.    How many letters did you review that I wrote?

4    A.    I don't remember.

5    Q.    Was it less than five or more than five?

6    A.    It might have been more than five but I don't

7   know if they were duplicates of the same letter.

8    Q.    Okay.

9    A.    Because I didn't read them all the way.

10    Q.    What time did the meeting take place?

11    A.    I believe it started at about 2:15.

12    Q.    What time did the meeting end?

13    A.    I am hesitating because we talked about other

14   things while he was there, not just this deposition.

15    Q.    I am not asking you to segregate anything.  I

16   am asking you how long did you meet with Calvin House

17   yesterday?

18    A.    About this deposition?

19    Q.    No.  How long did you meet with Calvin House

20   yesterday?

21    A.    In the entirety?  Excuse me, we spoke about

22   other things not related to this case.

23    Q.    I understand.  For the third time how much

24   time did you spend with Mr. House yesterday?

25    A.    Okay, I misunderstood the previous question.



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

17

1    I thought you meant did we meet about this deposition.

2    We might have -- we probably spent entirely, about other

3    things too, about two hours.

4         Q.    So you met at 2:15 until 4:15?

5         A.    Approximately 4:15, it might have been a

6    little longer.

7         Q.    And one of those two hours you spent talking

8    about deposition preparation in this case?

9         A.    Approximately, yes, maybe a little less.

10        Q.    So between the time 4:15 afternoon yesterday

11   and 9:30 this morning, 17 hours, you can't remember how

12   many documents you reviewed?

13        A.    I didn't say that.

14        Q.    I asked you how many documents did you review?

15        A.    I said I reviewed several letters but I didn't

16   read them all back to front.  Probably more than --

17   probably more than five I would say maybe five or seven,

18   not sure exactly, I didn't count them.

19        Q.    Describe the documents you read.

20        A.    As I said I didn't read them entirely.  Just

21   looked at them.

22        Q.    Okay.  Describe the documents that you looked

23   at to the best of your ability.

24        A.    Okay.  One of them was dated in August and it

25   was on letterhead that said Dimitrios Biller across the



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

18

1    bottom, had like a stripe, and I believe it was a single

2    spaced document.  I don't remember how many pages.  And

3    then another one was on the same type of paper and it

4    again said Dimitrios Biller across the bottom.

5            And I know that one of them, and maybe I'm

6    mixing them up, discussed electronic stored information,

7    and then there was another single-page document that

8    was -- I am sorry.  There was another letter in that

9    same -- so that was three then -- that seemed to start

10   off with the same introduction on your letterhead across

11   the bottom.

12           And then I believe attached to that was

13   another letter on your letterhead so that's four, and

14   they may have been duplicates, I don't remember the

15   exact dates, regarding an appeal that was filed by you

16   with the DHR.  And then there was a letter from me that

17   was a two-page document, that was not one page, that was

18   two pages from me.

19       Q.    The letter that you talked about an appeal

20   filed by me --

21       A.    Yes.

22       Q.    -- let's focus on these.  Can you remember any

23   other documents?

24       A.    No.

25       Q.    Were all these documents in your files?



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

Julie Dixon-Silve - Volume I                    September 4, 2009

19

1        A.    No.   The ones that I went over with Mr. House

2    were the -- he supplied them to me.

3        Q.    Have you ever seen them before?

4        A.    Yes.

5        Q.    When did you see them before?

6        A.    Back in 2008.

7        Q.    So you received the documents that you just

8    described back in 2008?

9        A.    Yes.

10       Q.    You received those documents in the ordinary

11   course of business as the general counsel for the

12   Los Angeles District Attorney's office; correct?

13       A.    I'm sorry, say that again.

14            (Record read.)

15            THE WITNESS:   I don't recall exactly what

16   dates I received them.   I received some of them in the

17   mail I recall.

18   BY MR. BILLER:

19       Q.    I didn't ask the dates.

20       A.    Okay.

21       Q.    I asked you whether you received the documents

22   in the ordinary course in your position as the general

23   counsel for the Los Angeles District Attorney's office.

24   Is that true or not?

25       A.    No, it is not true.



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com

20

1    Q.    How did you receive these documents then?

2    A.    Well, my title, you are not saying my title

3    correctly.

4    Q.    I am sorry.

5    A.    I am the county counsel lawyer that's assigned

6    to the District Attorney's office, and my title is chief

7    legal advisor to the District Attorney.

8    Q.    I apologize.  Let's just do it all over again.

9    A.    Okay.

10   Q.    You received these -- I thought you said when

11   I met you, you were the general counsel for the

12   L.A.D.A.'s office?

13   A.    No, I have never said that.

14   Q.    I apologize.

15   A.    I guess my memory is anyway.

16   Q.    You received these letters or these documents

17   that you just described in the ordinary course of

18   business in your position as counsel assigned to the

19   L.A.D.A.'s office; correct?

20   A.    Yes.

21   Q.    You are an attorney for the Los Angeles

22   County, County of Los Angeles; correct?

23   A.    Yes, I am an employee of the Los Angeles

24   county counsel's office.

25   Q.    How many lawyers are in that office?



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.342.5600
Facsimile: 310.286.0276

Suite 500
1875 Century Park East
Los Angeles, CA 90067
www.esquiresolutions.com